UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JONES,

        Plaintiff,

                                  Case No. 14-cv-10031
                                  Honorable Gershwin A. Drain

v.

IRON WORKERS LOCAL
25 PENSION FUND, *et al.*,

        Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR
JUDGMENT ON THE ADMINISTRATIVE RECORD AND
DENYING PLAINTIFF'S MOTION FOR JUDGMENT**

**I. INTRODUCTION**

On January 3, 2014, Plaintiff, William Jones ("Jones"), filed the instant action claiming that Defendants, Iron Workers' Local No. 25 Pension Fund and Trustees of the Iron Workers' Local No. 25 Pension Fund ("Trustees"), breached the terms of an employee benefit plan by denying his claim for benefits in violation of the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* Both Plaintiff and Defendants (collectively, "the Parties") stipulated that this Court would dismiss, with prejudice and without awarding costs or fees, Plaintiff's claim under the ADA. The Court dismissed the ADA claim on March 26, 2014.

Presently before the Court are the Parties' Cross-Motions for Judgment on the Administrative Record [#40, 42]. Both Motions have been fully briefed and the Court concludes that oral argument will not aid in the resolution of this matter. Accordingly, the Court will

resolve the motions on the briefs as submitted and cancel the December 10, 2014, and January 7, 2015 hearings. *See* E.D. Mich. L.R. 7.1(f)(2).  For the following reasons, the Court will **GRANT** Defendants' Motion for Judgment on the Administrative Record [#42] and **DENY** Plaintiff's Motion for Judgment [#42].

## II. Factual Background

From 1986 to 2011, Plaintiff spent 26 years employed as a reinforced iron and rebar worker. Plaintiff was represented by the Reinforced Iron Workers' Local No. 426 until 1996. In 1996, the Reinforced Iron Workers' Local No. 426 merged with Defendant, Iron Workers' Local No. 25, which represented Plaintiff for the remainder of his employment. Plaintiff brings his ERISA benefits claim under the Iron Workers' Local No. 25 Pension Plan (the "Plan").

Beginning in 2009, Plaintiff allegedly experienced increasing back and stomach pain that hindered his ability to work. Plaintiff asserts that, as a result of his inability to work, he was unable to qualify for medical benefits and unable to afford a doctor. In June and July of 2011, Plaintiff obtained two medical evaluations.  On June 29, 2012, the Social Security Administration found that Plaintiff was totally and permanently disabled with an effective disability date of May 7, 2011.

Plaintiff, claims that his back and stomach pain made him partially disabled from 2009 to 2011, and that an on-the-job work injury left him totally and permanently disabled as of April 28, 2011.  On July 12, 2012, Plaintiff applied for disability retirement benefits from Defendant Iron Workers' Local No. 25 Pension Fund under the Plan.  Dennis Kramer, the Iron Workers' Local No. 25 Pension Fund Administrator ("Plan Administrator") denied Plaintiff's application on September 11, 2012, and notified Plaintiff of the reasoning behind his decision.

The Plan Administrator reasoned that Plaintiff was not an "Active Participant" within the meaning of the Plan. Whether Plaintiff was an Active Participant depended, in relevant part, upon whether Plaintiff had suffered three consecutive one-year breaks in service. The Plan Administrator determined, and Plaintiff does not dispute, that Plaintiff worked less than the 870 hours required to be an Active Participant during the three years ending on April 30 of 2009, 2010, and 2011.

Plaintiff appealed the Plan Administrator's decision to the Trustees in an undated letter. In his appeal, Plaintiff argued that his failure to work the requisite 870 hours to qualify as an Active Participant 2009 to 2011 was a result of his injuries. Given these injuries, Plaintiff maintains that his years of reduced work should not constitute three consecutive one-year breaks in service because the Plan specifies that "No Break in Service shall occur during any period of disability." Dkt. No. 23 at 80 (Plan Section 3.7(a)).

Prior to his appeal, Plaintiff had undergone at least three medical examinations. On appeal, Plaintiff made a passing reference to one of these examinations. Further, Plaintiff stated that his back and gall bladder had suffered severe damage, his break in action was due to his injury, his injuries were confirmed by the University of Michigan Rheumatology Department, and that the injuries were 100% work-related. *See* Dkt. No. 23 at 29-34. Plaintiff further informed the Defendants: "If you would like to review these documents, you are more than welcome." *Id.* However, Plaintiff never presented his medical records to the Trustees for consideration.

On June 11, 2013, the Trustees notified Plaintiff that his appeal was denied, reaching the same adverse benefit determination as the Plan Administrator. However, after hearing Plaintiff's appeal and mention of potential medical injuries from the job, the Defendants' additionally

emphasized and explained that their decision was based on the fact that the effective date of the Social Security Administration's disability determination, May 7, 2011, was not within three years of the last year in which Plaintiff completed a minimum of 870 hours as required by the Plan to be an Active Participant.

### III. LAW & ANALYSIS

#### A.  Standard of Review

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). The Sixth Circuit requires an administrator or fiduciary to be granted "a clear grant of discretion" before a Court may replace the *de novo* standard of review. *Wulf v. Quantum Chemical Corp.*, 26 F. 3d 1368, 1373 (6th Cir. 1994).

"When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys.*, 150 F. 3d 609, 616 (6th Cir. 1998). "When a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F. 2d 963, 966 (6th Cir. 1990). Under the *de novo* standard, the court does not presume the correctness of the administrator's benefits determination nor does it provide deference to its decision. *Id.* at 966.

However, if a plan grants the administrator discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991).  Under this standard, decisions are not arbitrary and capricious if the decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence.  *Killian v. Healthsource Provident*

*Administrators, Inc.*, 152 F. 3d 514, 520 (6th Cir. 2005).   "[T]he arbitrary or capricious standard is the least demanding form of judicial review of administrative action and when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."   *Davis v.  Kentucky Finance Cos.  Retirement Plan*, 887 F.2d 689, 693 (6th Cir.  1989).

Under the arbitrary and capricious standard, the Court can overturn the administrator's decision "only by finding that they abused their discretion–which is to say, that they were not just clearly incorrect but downright unreasonable."   *Fuller v.  CBT Corp.*, 905 F.2d 1055, 1058 (7th Cir. 1990); *see also University Hospital of Cleveland v.  Emerson Elec.  Co.*, 202 F.3d 839, 846 (6th Cir.  2000).   "It is only if the court is confident that the decisionmaker overlooked something important or seriously erred in appreciating the significance of the evidence that it may conclude that a decision was arbitrary and capricious."   *Erickson v.  Metropolitan Life Ins. Co.*, 39  F.  Supp.2d 864, 870 (E.D. Mich.  1999).

Here, the Parties do not dispute that the Plan granted discretionary authority to the Trustees to interpret and apply the Plan's terms and determine eligibility for benefits. *See* Dkt. No. 23 at 121 (Plan Section 7.1, outlining the "Discretion of Trustees"); *see also* Dkt. No.40 at 11 (Plaintiff's acknowledgement of Trustees' discretion and the applicability of the arbitrary and capricious standard); Dkt. No. 42 at 8-9 (same for Defendants).   Accordingly, this Court's review of the denial of benefits will be made under the arbitrary and capricious standard.

## B.  Legal Analysis

The crux of this dispute centers on whether Plaintiff satisfied Section 4.5(a) of the Plan. Section 4.5(a) outlines the following criteria for a Participant's eligibility to receive disability benefits:

> Eligibility: Any **Active Participant** who has earned seven (7) or more Years of Service and who is totally and permanently disabled **and** effective January 1, 2006, has received a Social Security Disability award, prior to attaining his Normal Retirement Age, shall be eligible for a disability benefit on the same day that the Social Security Administration finds him disabled. ***The effective date that the Social Security Administration determines that a member is disabled must be within three (3) Plan Years of the last Plan Year in which the member completed a minimum of 870 hours.***

Dkt. No. 23 at 85 (Plan Section 4.5(a)) (emphases added).  The Parties dispute whether Plaintiff has satisfied two specific provisions from Section 4.5(a): (1) whether Plaintiff was an "Active Participant" at the time he applied for a disability pension, and (2) whether, at the time of the application for a disability pension, Plaintiff had a Social Security disability award with an effective date within three Plan Years of the last Plan Year in which the Plaintiff completed a minimum of 870 hours.

In order to examine this matter fully, further analysis of the language in the Plan is in order. The Plan defines an "Active Participant" as "a Participant who has not yet become a retired, deceased or former Participant and who has not suffered three (3) consecutive one-year breaks in service."  Dkt. No. 23 at 72 (Plan Section 1.21).  The Plan defines "breaks in service" as follows:

> A Break in Service shall have occurred, if in any Plan Year a Participant has less than eight hundred seventy (870) Hours of Service. ***No Break in Service shall occur during any period of disability***, or after the Participant has become eligible for Early or Normal Retirement. A permanent Break in Service shall occur if the number of consecutive one (1) year Breaks in Service exceeds the greater of five (5) or the number of Years of Service earned by a non-vested Participant prior to the Break in Service.

Dkt. No. 23 at 80 (Plan Section 3.7(a)) (emphasis added).

The standalone term "disability," is not specifically defined in the Plan.  Consequently, the meaning of Section 3.7(a) of the Plan is ambiguous. Nevertheless, the plan does define "Total and Permanent Disability," and outlines how the disability of a Participant in the plan is to be determined:

-6-

A physical or mental condition of a Participant resulting from bodily injury, disease, or mental disorder which renders him incapable of continuing his usual and customary employment with an Employer. The disability of a Participant shall be determined by a licensed physician chosen by the Trustees. The decision shall be applied uniformly to all Participants.

Dkt. No. 23 at 73 (Plan Section 1.30).

Turning our attention to the arguments of the Parties, Plaintiff asserts that Defendants' denial of disability benefits was arbitrary and capricious for five reasons:

(1) Plaintiff contends that Defendants failed to consult a healthcare professional, and that there was no proper finding of fact whether Plaintiff was disabled during his three-year break in service,

(2) Plaintiff contends that Defendants failed to review the entire Social Security disability award and failed to consider that Plaintiff's break in service was involuntary due to a disability,

(3) Plaintiff maintains that Defendants failed to provide additional material or information in order for Plaintiff to perfect his claim and why such material or information was necessary,

(4) Plaintiff contends that Defendants retroactively applied the break in service rule without Plaintiff's knowledge, and

(5) Plaintiff contends that Defendants failed to consider credited service that the Plan attributed to Plaintiff.

*See* Dkt. No. 40 at 1-2.  Defendant disagrees, and argues that, per the terms of the Plan, Defendants' denial of benefits was neither arbitrary nor capricious. *See* Dkt. No. 42 at 9.

### 1. The Court Does Not Find That the Defendants' Decision Was Arbitrary and Capricious

As discussed, Plaintiff has advanced five arguments in support of his claim that Defendants' actions were arbitrary and capricious.  Plaintiff's first, second, and fifth arguments deal specifically with whether the substantive decision was arbitrary or capricious. Accordingly, these decisions will be discussed together.  The remaining arguments will be addressed separately.

-7-

### a. The Defendants Did Not Need To Review the Entire Social Security Disability Award

According to the Administrative Record, Plaintiff submitted an Application for Disability Benefits, which was received July 12, 2012. Dkt. No. 23 at 38. Plaintiff acknowledges that, in his application for disability benefits, he "only submitted to the administrator the first two instructional pages and the decision itself from the [Social Security Administration]." Dkt. No. 40 at 16.

Thus, in making the initial decision, the Administrator was only provided with the Administrative Law Judge's conclusion that indicated Plaintiff was disabled under the Social Security Act on May 7, 2011. *See* Dkt. No. 23 at 41. It is critical to note that this was the ONLY information provided to the Administrator for his initial decision. Consequently, this was the only information on which the Administrator could rely in reaching his decision to deny Plaintiff's application for disability benefits. As Plaintiff, himself, makes clear "[h]e did not submit the Findings of Fact and Conclusions of Law," which indicated that Plaintiff could have had a disability prior to May 7, 2011. Dkt. No. 40 at 16 (citing Dkt. No. 23 at 39-41). Even on appeal, the Trustees were not provided with any medical documentation.

Furnished only with information indicating that Plaintiff was disabled under the Social Security Act since May 7, 2011, the Administrator informed Plaintiff that he was not eligible for disability benefits. Dkt. No. 23 at 36. On appeal, the Trustees reached the same decision and indicated that the denial of Plaintiff's application was twofold. The Trustees explained that the denial resulted from the fact that (1) Plaintiff was not an "Active Participant," and (2) the only disability with which the Trustees were aware—the Social Security disability—was not within three plan Years of the last Year in which the Plaintiff completed a minimum of 870 hours, as required by Section 4.5(a). *Id.* at 24-25. On appeal, the Trustees also went into considerable

detail in explaining their rationale. *Id.* Notably, the Plaintiff states that he "completely agrees" that this was the basis of the Trustees' denial of disability benefits. Dkt. No. 47 at 1.

The Defendants aptly note that "when reviewing a denial of benefits under ERISA, a court may consider only the evidence available to the administrator at the time the final decision was made." Dkt. No. 46 at 11 (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).[1]  The Court in *Miller* was clear in finding that "[t]his limitation applies to both an 'arbitrary and capricious' or a *de novo* standard of review." *Id.* at 986 (citing *Crews v. Central States, Southeast and Southwest Areas Pension Fund,* 788 F.2d 332, 336 (6th Cir.1986) (applying the principle to the "arbitrary and capricious" standard of review); *Perry v. Simplicity Engineering,* 900 F.2d 963, 966 (6th Cir.1990) (applying the principle to the *de novo* standard of review)).  Given the fact that the Defendants were not provided with the entire Social Security Award in the initial application or during the appeals process, and the fact that the Defendants based their decision on a factor independent of the specific details in the Social Security award, the Court finds that the Defendants did not need to review the entire Social Security award beyond Plaintiff's effective date of disability.

### b.  The Defendants Did Not Need to Consult a Health Care Professional

In this Court's Order Denying Plaintiff's Motion for an Evidentiary Hearing and to Supplement the Record, the Court was initially intrigued by Plaintiff's argument that, in denying Plaintiff's application for disability benefits, the Administrator made a decision that was based, in part, on a medical judgment. Dkt. No. 39 at 17.  Based off Plaintiff's framing of the situation,

---

[1] The Court also notes that "[i]n reviewing a *final* decision, this court must consider what occurred during the administrative appeals process." *Miller*, 925 F.2d at 986.

the Court noted that "the Trustees, on appeal, should have consulted a qualified health care professional." *Id.* at 18.

Nevertheless, the Court also indicated that it "must ultimately decide whether the Trustees' decision constitutes reversible error." *Id.* As discussed above, that substantive decision is to be made pursuant to the arbitrary and capricious standard.  *See Miller*, 925 F.2d at 983. Looking at the evidence available to the Trustees at the time their final decision was made and the rationale provided for the Defendants' decision; the Court does not find that the Trustees' decision denying disability benefits was arbitrary and capricious given the high level of deference this Court must afford the Defendants' decision.

To reiterate, in determining whether the Trustees' decision was arbitrary and capricious, the Court emphasizes that an arbitrary and capricious decision "has been defined as 'so patently arbitrary and unreasonable as to lack foundation' factually or legally." *Kozlesky v. Bd. of Trustees for Amalgamated Dep't Store & Retail Employees Ret. Income Plan*, 546 F. Supp. 466, 468 (E.D. Mich. 1982) (citing *Roark v. Lewis*, 401 F.2d 425, 429 (D.C. Cir. 1968)). Looking at the circumstances surrounding the Defendants decision, the reasoning provided, and the information that the Defendants had when denying Plaintiff's application, the Court does not find the Defendants' decision was patently unreasonable.

Plaintiff asserts that "[w]hen a plan fiduciary requires a claimant a disability pension to apply [sic] for Social Security benefits and receives a financial benefit from the claimant's receipt of SSA benefits, it is inconsistent for the fiduciary to ignore the Social Security Administration's determination that a claimant is disabled." Dkt. No. 40 at 16.  The Court agrees that such a situation would be inconsistent.

-10-

Nevertheless, that is not the situation here.  The Administrative Record indicates the Defendants did, in fact, rely, specifically, on the Social Security Administration's determination that the Plaintiff was disabled. The Defendants repeatedly explained to Plaintiff that their decision regarding Plaintiff's disability benefits was specifically based on the Social Security Administration's determination that Plaintiff was disabled effective May 7, 2011.  As the Court has discussed above, that is the only information that was provided to the Defendants; and, accordingly, the Court finds that the Defendants did not need to consult a qualified health care professional because the effective date of the Social Security award was not within three plan Years of the last Year in which the Plaintiff completed a minimum of 870 hours, as required by Section 4.5(a).

As the Defendants note, given the fact that their decision was based solely on the Social Security Determination, even if the Plaintiff had a "disability" not supported by a Social Security Award in the years spanning 2009 to 2011, Plaintiff still would not be entitled to a disability pension benefit. Dkt. No. 46 at 10.   This is the case because Plaintiff's Social Security disability award had an effective date of May 7, 2011, which was not within three Plan Years of the last Plan Year in which Plaintiff completed a minimum of 870 hours. *Id.* Instead, the Administrative Record indicates that the last year Plaintiff worked 870 hours was the Plan Year ending April 30, 2008. Dkt. No. 23 at 22.

In response to this argument, Plaintiff attempts to conflate Section 3.7(a)'s break in service standard with the language of Section 4.5 to create a break in service rule for periods of disability in connection with the effective date of the social security award. *See* Dkt. No. 45 at 10-14 (referring to a "Social Security break in service rule").  However, Plaintiff, revealingly, indicates that "[t]here is no express provision excepting involuntary breaks in service from the

Social Security break-in-service rule." *Id.* at 12.   Instead, according to Plaintiff, it is to be "assumed that the parties approving the Plan intended the Social Security break-in-service rule to reward participants who remained in the industry." *Id.*

The Court is not convinced by Plaintiff's argument.   It is rather disingenuous for the Plaintiff to concede, on the one hand, that there is no express provisions mentioning a "Social Security break in service," yet, nevertheless, argue that the Defendants' acted in an arbitrary and capricious manner in not considering a social security break in service.

Along the same lines, the Court is not swayed by Plaintiff's repeated attempts to distinguish between involuntary and voluntary disabilities.   The Plaintiff repeatedly attempts to offer an alternative interpretation of the Plan language by arguing that the Defendants' interpretation of the word "disability" under the Plan is unreasonable.   *See*, *e.g.*, Dkt. No. 34 at 11 (citing a plethora of cases not binding on this Court to assert that "the drafter probably used the term 'disability' in Section 3.7(a) to allow a liberal interpretation in recognition of the case law excusing an involuntary break in service, whether involuntary due to partial or total disability.").

However, in reviewing the Defendants' decision, the Court will not weigh whether Plaintiff's interpretation of the Plan is more reasonable than the interpretation advanced by the Defendants.   Instead, the Court must determine if the Defendants' decision to terminate benefits was the product of deliberate principled decision-making and based on substantial evidence. *Killian*, 152 F. 3d at 520.

When reviewing the Defendants decision, the Court finds that the Defendants provided a well thought out interpretation of the Plan language.   The Defendants explained that regardless of whether Defendant had a disability as determined by a medical professional, the Plaintiff

would not have been entitled to an award because his disability award was outside of the three

Plan Years of the last Plan Year in which the applicant completed a minimum of 870 hours.  The

Defendants explained that they reached their conclusion by reading Section 3.7(a) of the Plan in

conjunction with Section 4.5(a) of the Plan:

> In conjunction with Section 4.5(a), it is reasonable for the Trustees to interpret 'disabled'
> in Section 3.7 to mean disabled as determined by the Social Security Administration. . . .
> This is why the Trustees informed Plaintiff's Counsel that the language of section 3.7(a)
> did not change their conclusion, as the disability (i.e. as determined by the Social
> Security Administration) was after the break in service had already occurred. . . . This
> interpretation is further reasonable in light of the fact that no other interpretation would
> aid a participant in obtaining a disability pension benefit.

Plaintiff disagrees with the Defendants' interpretation, and states that is neither reasonable nor

logical to interpret the term "disability" in Section 3.7(a) in conjunction with Section 4.5(a), as

"the meaning of a word in its initial context would color its meaning in subsequent uses." Dkt.

No. 45 at 10-11.

As a matter of law, the Court does not agree that the meaning of a word in its initial

context necessarily colors the words meaning in subsequent uses.  *See*, *e.g.*, *Royal Ins. Co. of

*Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 420 (6th Cir. 2008) (citing

*Restatement (Second) of Contracts* § 203 (1981), for the proposition that "[w]ell-founded

principles of contract law establish that 'specific terms and exact terms are given greater weight

than general language' and that 'separately negotiated or added terms are given greater weight

than standardized terms. . . .' "); *see also*, *e.g.*, *Friedrich v. Local No. 780, IUE-AFL-CIO-CLC*,

515 F.2d 225, 227 (5th Cir. 1975) (quoting *G. T. Schjeldahl Co., Packaging Mach. Div. v. Local

*Lodge 1680 of Dist. Lodge No. 64 of Int'l Ass'n of Machinists*, 393 F.2d 502, 504 (1st Cir. 1968),

for the proposition that "[u]nder well established rules of contract interpretation, a contractual

clause must be read in its context, and 'a subsequent specification impliedly limits the meaning

of a preceding generalization.'); *J. E. Faltin Motor Transp., Inc. v. Eazor Exp., Inc.*, 273 F.2d

-13-

444, 445 (3rd Cir. 1959) ("We thus comply with oft cited standards of interpretation: the specific controls the general; . . . .").

Given that the Defendants have advanced a reasoned and principled decision based in the law, the Court's inquiry will cease on this issue. It is inappropriate for the Court to weigh and balance Plaintiff's alternative explanations and interpretations for the Defendants' decision, because the Court's decision must be limited by the bounds of the arbitrary and capricious standard.

Plaintiff did not work 870 hours in the Plan Years ending April 30, 2009; April 30, 2010; and April 30, 2011. The only disability award Plaintiff received, and the Defendants could consider, was Plaintiff's Social Security disability award effective May 7, 2011. As Plaintiff, himself, explains, "[t]he effective date that the Social Security Administratin determine[d] that [Plaintiff was] disabled must [have been] within 3 Plan Years of the last Plan Year in which he completed a minimum of 870 hours." Dkt. No. 40 at 9. The Administrative Record indicates that the last year Plaintiff worked 870 hours was the Plan Year ending April 30, 2008. Dkt. No. 23 at 22.

Thus, with respect to the substantive decision, the Court finds that the Defendants' reasonably relied on the Plan and the only piece of evidence Plaintiff submitted in his application for disability benefits: the Social Security Administration's finding that Plaintiff was effectively disabled on May 7, 2011. Accordingly, the Court finds that the Defendants did not need to consult a health professional.

### c.   The Defendants Properly Explained That Plaintiff's Receipt of Worker's Compensation Did Not Make Plaintiff Eligible For a Disability Benefit

Next, Plaintiff argues that the Defendants did not consider the fact that the credited service the Plan attributed to the Plaintiff during his receipt of worker's compensation made him

-14-

eligible for disability pension benefits. Dkt. No. 40 at 26.  To the contrary, however the Trustees

did address and dismiss Plaintiff's claim that his years of reduced work did not constitute a break

in service due to his involuntary disability.

Specifically, in a letter to Plaintiff, the Trustees explained that Plaintiff's workers'

compensation award was not relevant to re-establishing an active status because Plaintiff's

compensation award was effective after he became an active participant:

> Mr. Jones did not return to work. A workers' compensation award effective <u>after</u> he
> became an Inactive Participant is not relevant to re-establishing Active status. . . .
> *[Plaintiff] cannot use hours credited under [§3.6] after he becomes Inactive to restore*
> *Active status. As [§3.7(c) indicates], he must return to work to restore Active status.*
> *(We note §3.6 also states that individuals receiving a disability pension will be granted*
> *a Year of Service for every full year they are receiving disability benefits - obviously,*
> *this does not make them Active.)* . . . [I]if the workers' compensation award had an
> effective date prior to Mr. Jones having become Inactive, under the language of §3.6 any
> such hours could have been used to prevent him from becoming Inactive. However, once
> he became Inactive, the language of §3.7(c) requires that he return to work to restore
> Active status. . . . Mr. Jones's three one-year Breaks in Service, which led to Inactive
> status, occurred before he became disabled. Nothing in the Plan allows a disability to cure
> a Break in Service that has already occurred.

Dkt. No. 23 at 5-6 (italicized emphasis added).  Again, this is simply another attempt by Plaintiff

to argue that his interpretation of the Plan is superior to the interpretation advanced by the

Defendants. *See* Dkt. No. 40 at 28 (Plaintiff arguing that his interpretation of the Plan is

reasonable and the interpretation of the Defendants is wrong based on the "the intent" of the

Plan).

It is misleading for the Plaintiff to state that the Defendants did not consider his argument

that the credited service Plan attributed to the Plaintiff made him eligible for disability pension

benefits, because Defendants' letter to Plaintiff was in direct response to a letter from Plaintiff in

which he makes the same arguments he has advanced in his Motion for Judgment. *Compare* Dkt.

No. 23 at 11-22, *with* Dkt. No. 40 at 21-26.

Again, the Court reiterates that it must stay within the bounds of the arbitrary and capricious standard.   Though the Plaintiff argues that the Defendants' interpretation is unreasonable, the Defendants have already explained that they have made their determination based on their interpretation of the Plan language.  In fact, the Defendants responded directly to the argument advanced by Plaintiff and noted that they believed Plaintiff's interpretation undermined the intent of the disability benefit:

> Under your interpretation, an individual could be Inactive vested participant for 10 years, receive a Social Security award, provide proof of the award, and then be entitled to a disability pension benefit as an "Active" participant. This undermines the intent of the disability benefit, which is to provide a benefit to those who have lost their ability to work in the trade while still Active participants.)

Dkt. No. 23 at 6.   Again, the Court reiterates that it will not choose whether Plaintiff's interpretation is more reasonable than the interpretation advanced by the Defendants.  The Court must, instead, ensure that the Defendants did not overlook anything important or seriously err in appreciating the significance of the evidence.  Given the rationale advanced by the Defendants, the Court finds that there was no serious error or serious oversight in the Defendants' decision.

Thus, in sum, in making their substantive decisions, the Court does not find that the Defendants abused their discretion, were clearly incorrect, or were downright unreasonable. *See Fuller*, 905 F.2d at 1058; *see also University Hospital of Cleveland*, 202 F.3d at 846.  In relying on the evidence before them, the Court finds that the Defendants have provided a reasoned explanation, based on the evidence, for their decision and that the decisions were not arbitrary or capricious.

### 2.  The Court Finds that the Defendants Substantially Complied with the ERISA and Plan Notice Requirements

Next, Plaintiff argues that the Defendants violated Section 503 of ERISA.  As an initial matter, this Court notes that it has previously determined that the Defendants complied with

Section 503 of ERISA. Dkt. No. 39 at 13-16. For clarity, however, the Court will explain its decision in more detail. To begin the Court notes that "ERISA, and its implementing regulations, require that adequate notice be given to each claimant upon termination of benefits, and that the claimant be given a reasonable opportunity for *full and fair review* by the fiduciary denying the claim." *Blajei v. Sedgwick Claims Mgmt. Servs., Inc.*, 721 F. Supp. 2d 584, 608 (E.D. Mich. 2010) (emphasis added).

Specifically, pursuant to Section 503 of ERISA, 29 U.S.C. § 1133, a plan administrator must:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. Additionally, the implementing regulations for Section 1133 provide that "[t]he notification shall set forth, in a manner calculated to be understood by the claimant:"

> (i) The specific reason or reasons for the adverse determination;

> (ii) Reference to the specific plan provisions on which the determination is based;

> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]

29 C.F.R. 2560.503–1(g). The Plan language for providing notice to an individual who has received an adverse decision by the Defendants mirrors the implementing language of Section 1133 of ERISA:

The Fund Office shall provide a claimant with written or electronic notification of any adverse benefit determination (i,e, denial of claim). The notification shall set forth, in a manner calculated to 'be understood by the claimant- . . . A description of any additional material or information necessary for the claimant to' perfect the claim and an explanation of why such material or information is necessary[.]

Dkt No. 23 at 53-54 (Plan Rule 7.7(c)); *cf.* 29 C.F.R. 2560.503–1(g)(iii).

"The 'essential purpose' of Section 1133 is twofold: '(1) to notify the claimant of the specific reasons for a claim denial, and (2) ***to provide the claimant an opportunity to have that decision reviewed by the fiduciary***.' " *Blajei,* 721 F. Supp. 2d at 609 (quoting *Wenner v. Sun Life Assur. Co. of Canada,* 482 F.3d 878, 882 (6th Cir. 2007)) (emphasis added).  In order to ensure that the Courts adhere to the essential purpose of Section 1133, the Sixth Circuit has adopted a rule of substantial compliance with respect to ERISA's procedural requirements. *See Moore v. LaFayette Life Ins. Co.,* 458 F.3d 416, 436 (6th Cir. 2006) (citing *Kent v. United of Omaha Life Ins. Co.,* 96 F.3d 803, 807 (6th Cir. 1996)).

Under the substantial compliance standard, " '[t]he question is whether [the plan participant] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision [so as] to permit effective review.' " *Id.* (quoting *Brehmer v. Inland Steel Indus. Pension Plan,* 114 F.3d 656, 662 (7th Cir. 1997)).

"To decide whether there is substantial compliance, [the] Court considers ***all communications*** between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *McCartha v. Nat'l City Corp.,* 419 F.3d 437, 444 (6th Cir. 2005) (emphasis added) ; *see also Kent,* 96 F.3d at 807. Whether the procedure employed by the fiduciary in denying the claim meets the requirements of Section 1133 is a question of law which this Court reviews *de novo. See Blajei,* 721 F. Supp. 2d at 609

(citing *Kent,* 96 F.3d at 806, which cites *Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1069 (6th

Cir. 1994), for the same proposition).

Upon review, and after reviewing all communications between the Defendants and

Plaintiff, the Court, again, finds that the Defendants substantially complied with Section 503 of

ERISA.  As this Court has previously held, the Trustees allowed Plaintiff the opportunity to

present his medical records on more than one occasion, thoughtfully and thoroughly responded

to Plaintiff's arguments, specified the reasoning behind their decision as well as the specific

provisions of the Plan upon which it was based, and provided Plaintiff with instructions on how

to cure his claim.

As the Court has previously noted, the Defendants put Plaintiff on notice that providing

the Trustees with evidence of a worker's compensation award and injury prior to April 30, 2011,

could change the disposition of his claim.  *See* Dkt. No. 39 at 14.  The Court finds that this notice

provided Plaintiff with a sufficiently clear understanding of the administrator's decision so as to

permit effective review, as evidenced by the fact that Plaintiff did, in fact, provide the details of

his worker's compensation award which had an effective date after April 30, 2011. *See* Dkt. No.

23 at 11.  Accordingly, because the Plaintiff knew how to perfect his claim, and, in fact,

attempted to perfect his claim, the Court finds the Defendants substantially complied with

ERISA's procedural requirements. *See Moore,* 458 F.3d at 436.

The Court further notes that "an administrator's failure to comply with ERISA procedural

requirements can result in a remand by the reviewing court to the administrator," *Moore,* 458

F.3d at 436.  Nevertheless, remand is not required if it would "represent a useless formality,"

*McCartha,* 419 F.3d at 444 (citing *Kent,* 96 F.3d at 807). Thus, even if this Court did find that

the Defendants failed to comply with ERISA Section 503, the Court would not remand the matter if it would represent a useless formality.

Pursuant to Sixth Circuit precedent, remand represents a useless formality if the plan administrator provides at least one reasonable basis for the denial of benefits, even if two different and independent reasons are given for the denial. *Id.* at 446-47.  Here, the Plaintiff has focused much of his argument on the notice involving perfection of his claim regarding his status as an Active Participant.  Nevertheless, as we have discussed, even if Plaintiff was deemed to have a disability in the years from 2009 to 2011, the Defendants still would not have given him an award because he hadn't worked 870 hours since the year ending April 30, 2008.  Consequently, assuming there was inadequate notice with respect to the Plaintiff perfecting his claim, the Court would still find that remanding the matter would result in a useless formality.

### 3.   Retroactive Break in Service

Lastly, Plaintiff argues that the Defendants "retroactively" applied the break in service rule to the Plaintiff. *See* Dkt. No. 40 at 21-26.  The Plaintiff cites two cases in support of his position: (1) *Burroughs v. Board of Trustees*, 542 F.2d 1128 (9th Cir. 1976), and (2) *Swackard v. Commission House Drivers Union Local No. 400*, 647 F.2d 712 (6th Cir. 1981).

The Defendants argue that *Burroughs* is inapplicable in this case because it involved the failure to provide prior notice to a plaintiff of a change in rule.  Here, the Defendants argue that the Plaintiff did receive notice of the rule change prior to his application for the change in benefits. *See* Dkt. No. 46 at 18 (referencing Dkt. No. 46-1).  The Plaintiff does not rebut this argument and the Court agrees with the Defendants.  It appears that the Defendants provided Plaintiff with notice of the existence of the new policy, and, accordingly Plaintiff had a reasonable opportunity to protect himself form its impact. *See* Dkt. No. 46-1.

With respect to *Swackard*, the Defendants argue that the case is inapplicable because the Trustees did not infer or insert a new rule into the plan in the present situation. Again, Plaintiff does not counter this argument. Also, again, the Court agrees with Defendants. In *Swackard*, the Court ruled for the Plaintiff because the trustees in that case effectively inserted a new rule into the plan at issue. Here, the court does not find that there was any adoption of a new definition that was not already in the Plan documents. To the contrary, as evidenced by the arguments we have discussed throughout this Opinion, the Court will find that Defendants have explained the specific Sections of the Plan for which they relied in reaching their decision. Accordingly, the Court will find that the Defendants did not retroactively apply the break in service rule to the Plaintiff.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' Motion for Judgment [#42 ] and **DENY** Plaintiff's Motion for Judgment [#40].

The Court retains jurisdiction to resolve any post-judgment motions concerning Defendants' request for costs and attorney fees.

This cause of action is dismissed.

SO ORDERED.

Dated: November 13, 2014

/s/Gershwin A Drain
Hon. Gershwin A. Drain
United States District Court Judge

-21-